**Affirmed as Modified and Memorandum Opinion filed December 5, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00875-CR

---

### KEVIN DEWAYNE WALTON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 1318419**

---

## M E M O R A N D U M   O P I N I O N

Appellant Kevin Dewayne Walton was convicted of harassment of a public servant. The jury sentenced him to twenty-five years in prison. In three issues he challenges his conviction on the grounds (1) his sentence is grossly disproportionate to the offense; (2) he was denied a right to present a defense; and (3) the trial court's assessment of court costs was unlawful. We sustain appellant's third issue. Finding no reversible error in his remaining issues, we modify the trial

court's judgment to delete the specific amount of court costs and affirm the judgment as modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant was indicted for the offense of harassment of a public servant. The indictment also contained two enhancement paragraphs stating that appellant had been previously convicted of tampering with a government record and possession of a controlled substance. The two enhancement paragraphs enhanced appellant's punishment range from two to ten years for a third degree felony to twenty-five years to life in prison.

At trial, Officer Renauldo Delasbour, a member of the Divisional Tactical Unit of the Houston Police Department, testified that he was assisting the Vice Division in a prostitution investigation on August 30, 2011. Delasbour and his partner were in a marked patrol unit to aid in arresting individuals caught in a sting by undercover officers. Appellant was arrested for prostitution and placed in the back of Delasbour's patrol car. Officer Chase Simpson was also parked in a patrol car next to Delasbour's car with approximately one foot between the cars. The windows were open and Simpson was asking appellant questions filling out the police blotter when Delasbour heard Simpson tell appellant, "Hey, that's not the way to go, . . . Don't do that." Delasbour learned later that appellant had spit on Simpson. A short time later appellant spit on Simpson a second time. Simpson eventually removed appellant from the car and detained him.

Officer Rudy Amador testified that appellant spit on Simpson twice and became belligerent with the officers. Appellant would not comply with verbal orders, and was trying to spit on the officers.

Officer Simpson testified that appellant was arguing with him about the

2

prostitution arrest when appellant spit toward him, but hit the rearview mirror. Simpson told appellant that it was a crime to spit on a police officer, and appellant looked directly at him and spit at him. The spittle landed on Simpson's forehead, cheek, and chest.

After the State rested, appellant testified that he had prior convictions for unlawfully carrying a weapon, tampering with evidence, and possession of a controlled substance. Appellant testified that he did not intentionally spit at the officer, but spit because it was hot and he was dehydrated. At the conclusion of appellant's direct testimony, the State introduced evidence of appellant's two prior convictions for possession of a controlled substance, one conviction for evading detention, and one conviction for tampering with evidence.

After finding appellant guilty, the jury heard evidence on punishment. Prior to the punishment hearing, appellant pleaded true to two prior convictions alleged in enhancement paragraphs in the indictment. After hearing evidence on punishment, the jury assessed a twenty-five-year sentence, the minimum sentence permitted for appellant's offense, enhanced by two prior convictions. *See* Tex. Penal Code Ann. § 12.42(d) (West Supp. 2013).

## II. ANALYSIS

### A. Appellant's disproportionate sentence issue

In his first issue, appellant challenges his sentence as grossly disproportionate to the crime. Appellant argues that a twenty-five-year-sentence is grossly disproportionate to the crime of spitting on a police officer. We initially note that appellant failed to object in the trial court when his sentence was pronounced. Appellant recognizes his failure to preserve error, but argues the error was "fundamental" and caused him to suffer egregious harm.

3

Unless alleged error is fundamental, a party waives it by failing to object. *See* Tex. R. Evid. 103(d). Error is fundamental if it affects a party's substantial rights and creates egregious harm. *Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Courts have determined that fundamental error includes violation of constitutional rights such as the right to an impartial judge, the right to counsel, the right to not have members of the defendant's race unlawfully excluded from the grand jury, the right to self-representation, and the right to a public trial. *Id.* (*citing Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)).[1] Appellant's disproportionate sentencing issue does not fall within one of the categories of fundamental error identified by the United States Supreme Court.

We decline to extend the courts' fundamental error rulings to permit us to deviate from the long-standing rule that errors in sentencing can be waived by failure to object. *See, e.g., Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) ("[I]n order to preserve for appellate review a complaint that a sentence is grossly disproportionate, constituting cruel and unusual punishment, a defendant must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired."); *Trevino v. State*, 174 S.W.3d 925, 927–28 (Tex. App.—Corpus Christi 2005, pet. ref'd) ("Because the sentence imposed is within the punishment range and is not illegal, we conclude that the rights [appellant] asserts for the first time on appeal are not so fundamental as to have relieved him of the necessity of a timely, specific trial objection."); *Teixeira v. State*, 89 S.W.3d 190, 192 (Tex. App.—Texarkana 2002,

---

[1] In addition to the fundamental errors described by the United States Supreme Court, a plurality of the Texas Court of Criminal Appeals determined that fundamental error could occur if a trial judge makes a comment that taints the presumption of innocence. *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000).

pet. ref'd) (holding that appellant failed to preserve complaint that trial court arbitrarily refused to consider entire range of punishment because he failed to make timely objection); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (holding that failure to complain to trial court that consecutive sentences constitute cruel and unusual punishment waives error).

Even if appellant had preserved error, however, we could not conclude that his sentence is disproportionate to the offense for which he was charged. Punishment assessed within the statutory limits is generally not considered cruel and unusual. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984); *see also Baldridge v. State*, 77 S.W.3d 890, 893–94 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) ("It has long been recognized that if the punishment assessed is within the range of punishment established by the Legislature under its constitutional authority, there is no violation of the state constitutional provisions against cruel and unusual punishment."). Appellant was convicted of harassment of a public servant, a third-degree felony, and he pleaded true to two felony enhancement paragraphs, elevating the range of punishment to twenty-five to ninety-nine years or life and a fine not to exceed $10,000. *See* Tex. Penal Code Ann. §§ 12.42(d), 22.11. Therefore, appellant's sentence falls well within the statutory limits.

Appellant contends that his sentence is grossly disproportionate to the crime when compared to the gravity of the offense. Criminal sentences must be proportionate to the crime and even a sentence within the statutorily prescribed range may violate the Eighth Amendment. *See Solem v. Helm*, 463 U.S. 277, 290 (1983); *Baldridge*, 77 S.W.3d at 893. In conducting an Eighth-Amendment proportionality analysis, we first make a threshold comparison of the gravity of the

offense against the severity of the sentence. *Harris v. State*, 204 S.W.3d 19, 29 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Baldridge*, 77 S.W.3d at 893. Only upon determining that the sentence is grossly disproportionate to this particular crime do we then consider: (a) the sentences for similar crimes in the same jurisdiction; and (b) the sentences for the same crime in other jurisdictions. *Baldridge*, 77 S.W.3d at 893.

Appellant's sentence was not based on his conduct in this case alone. Instead, appellant's sentence was based on the habitual felony offenders statute. Under a recidivist statute, a sentence is based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. *Harris*, 204 S.W.3d at 29. (*citing Rummel v. Estelle*, 445 U.S. 263, 284 (1980)). "A state with a recidivist statute is not required to treat a defendant as if an offense was his first but is entitled to place upon the defendant the onus of one who is simply unable to bring his behavior into conformance with the criminal laws of the state." *Harris*, 204 S.W.3d at 29.

Appellant had two prior convictions for possession of a controlled substance plus a conviction for tampering with evidence and a conviction for evading detention. He pleaded true to two enhancement paragraphs alleged in the indictment alleging prior convictions for tampering with evidence and possession of a controlled substance. Appellant admitted to several offenses ranging over a period of twenty years. With regard to the instant offense, appellant repeatedly spat on police officers after having been arrested for prostitution. Appellant fought with officers and had to be physically subdued. Given the gravity of the instant offense and appellant's demonstrated inability to bring his conduct into conformity with the laws of the state, we cannot conclude that his sentence is grossly

disproportionate to this particular offense. We overrule appellant's first issue.

## B. Appellant's right to present a defense issue

In his second issue, appellant contends he was denied his constitutional right to present a defense by the trial court's prohibiting counsel from questioning Mark Escamilla, a private investigator, about his efforts to contact a possible witness.

With regard to a potential witness, Escamilla testified as follows:

Q. [by Mr. Salazar, defense counsel] Were you able to make contact with Mr. Delvin Johnson a witness for Mr. Walton?

MS. BAKER [the prosecutor]: I object to that question, Judge.

THE COURT: Sustained.

Q. (By Mr. Salazar) Were you able to find any witness for Mr. Walton?

A. No.

Q. Did you make every effort to contact this witness that Mr. Walton was hoping for?

MS. BAKER: I'm going to object to that question, Judge.

THE COURT: What's your objection?

MS. BAKER: That it's not relevant.

THE COURT: Sustained.

Q. (By Mr. Salazar) Did you speak to Mr. Delvin Johnson?

MS. BAKER: Object to relevancy.

THE COURT: Sustained.

Q. (By Mr. Salazar) Did you speak to Mr. Walton's mother?

MS. BAKER: Object to the relevancy of that, too.

THE COURT: Sustained.

MR. SALAZAR: May I explain, Your Honor?

THE COURT: No, sir.

Q. (By Mr. Salazar) Were you able to leave a subpoena for Mr. Johnson?

A. Yes, I did.

Q. Do you know of any response from him regarding that?

MS. BAKER: Object to the relevance, Your Honor.

THE COURT: Sustained.

Appellant contends that by sustaining the State's relevancy objections, the trial court prevented him from developing evidence in support of his defense.

A defendant has a fundamental right to present evidence of a defense as long as the evidence is relevant and is not excluded by an established evidentiary rule. *Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). A defendant has the right to present a vigorous defense, and the jury should be allowed to hear all admissible evidence offered by the defendant that bears on any defensive theories. *Id.* at 508. A constitutional right to present a meaningful defense, however, is rarely denied by an incorrect evidentiary ruling. *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002); *Kappel v. State*, 402 S.W.3d 490, 495 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

A trial court can place reasonable restrictions on the evidence a defendant presents to the jury. *Potier*, 68 S.W.3d at 663. "Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate' to the purposes they are designed to serve." *Id.* A trial court's exclusion of evidence offered by the defense will violate due process only if (1) the evidentiary rule being applied categorically and arbitrarily prohibits the defendant from offering reliable or relevant evidence that is vital to his defense, or (2) the trial court's ruling erroneously excludes evidence that "forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Id.* at 659–62 ; *see also Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App. 2002).

In this case, appellant does not assert the unconstitutionality of a rule of evidence, but complains about the limitations the trial court placed on his examination of Escamilla regarding his efforts to contact potentially favorable witnesses. Appellant argues that the trial court's "complete refusal to allow counsel to develop the record regarding [appellant]'s defense categorically denied [appellant] his constitutional rights to present a meaningful defense." Appellant, however, failed to make this argument in the trial court. Defense counsel asked if he could explain the relevance of his questions to Escamilla, but did not argue that the court's limitation of his examination amounted to a violation of appellant's due process rights.

Because appellant failed to raise this issue in the trial court, he did not preserve error for review. *See Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012) (holding that because defense counsel failed to alert the trial court that he was requesting relief based on a violation of defendant's constitutional rights, due process argument was not preserved for appellate review); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (holding that due process right to present a defense is subject to forfeiture if not properly asserted in the trial court).

Even if the argument had been properly preserved, by sustaining the State's relevancy objections, the trial court did not prevent appellant from presenting a defense. The trial court prevented appellant from questioning an investigator on the details of his attempts to contact witnesses. Appellant presented no proffer of evidence as to the content of the potential witnesses' testimony, or in what way such testimony would prove favorable toward appellant. Appellant has not shown that the excluded evidence formed such a vital portion of the case that exclusion effectively precluded him from presenting a defense. *See Potier*, 68 S.W.3d at 665; *Wiley*, 74 S.W.3d at 405. The trial court's limitation on appellant's examination of

9

Escamilla did not rise to the level of violating appellant's due process right to present a defense. *See Potier*, 68 S.W.3d at 663–66. We overrule appellant's second issue.

### C. Appellant's court costs issue

In his third issue, appellant argues the trial court's assessment of court costs was unlawful in that there was insufficient evidence to support the court costs of $274 assessed against him in the judgment.

In its judgment, the trial court ordered appellant to pay $274 in court costs. Appellant requested the district clerk to include the bill of costs in the appellate record. In *Johnson v. State*, 389 S.W.3d 513, 517 (Tex. App.—Houston [14th Dist.] 2012, pet. granted), this court held that if the record does not support the assessment of a certain dollar amount in costs, the trial court errs in entering a specific dollar amount in its judgment.

As in *Johnson*, it is undisputed that the record contains no bill of costs or any other evidence that would support the specific amount, $274, assessed in the judgment. *See id.* The clerk's record contains a printout of a computer screen from the Harris County Justice Information Management System (JIMS), entitled "J.I.M.S. Cost Bill Assessment," identifying $274 in court costs. The printout is unsigned and undated. This court has determined that an unsigned computer screen printout from JIMS that does not appear to have been brought to the attention of the trial court judge before he signed the judgment is not an actual bill of costs as contemplated by article 103.001. *See Jelks v. State*, 397 S.W.3d 759, 760 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (concluding that a computer screen printout from JIMS signed by an unidentified individual, when printout was not presented to the trial judge, could not be considered an appropriate bill of costs); *Johnson*, 389 S.W.3d at 517 n.1.; Tex. Crim. Proc. Code Ann. art. 103.001 (West

10

2012). The JIMS document does not bear a signature or a date, nor is there evidence in the record that it was presented to the trial court before the specific dollar amount was included in the judgment. Thus, the JIMS document cannot be considered an appropriate bill of costs. *See Jelks*, 397 S.W.3d at 760; *Johnson*, 389 S.W.3d at 517 n.1. No other evidence in the record supports the specific dollar amount assigned as court costs. *See Johnson*, 389 S.W.3d at 517 n.1.

The State argues that there are numerous provisions in the Texas Code of Criminal Procedure authorizing various court costs to be paid by a defendant when convicted of a felony offense. The State suggests several specific articles of the Code of Criminal Procedure and three sections of the Local Government Code providing for fees that, if assessed against appellant, would add up to an amount of at least $274.[2] Therefore, the State maintains, the evidence is sufficient to support the $274 in court costs reflected in the judgment.

We have previously rejected this argument. In *Rogers v. State*, 402 S.W.3d 410, 420 (Tex. App.—Houston [14th Dist.] 2013, pet. filed), we held that to affirm the judgment for costs merely because a number of statutes authorize certain costs or fees that could have been assessed against the defendant—without regard to whether they were actually assessed—would be speculative.

The trial court did not err in ordering appellant to pay court costs, as such costs are mandated by law, but the court did err in entering a specific dollar amount without any support in the record for that dollar amount. *See Johnson*, 389 S.W.3d at 516. Because there is no evidence in the record to support the trial court's assessment of a specific dollar amount as court costs, we sustain appellant's

---

[2] *See* Tex. Code Crim. Proc. Ann. arts. 102.0045, 102.005, 102.011, 102.0169, 102.017 (West 2012) and Tex. Loc. Gov't Code §§ 133.102, 133.105, 133.107 (West 2008).

third issue and modify the trial court's judgment to delete the specific dollar amount of costs assessed. *See id.*; *see also Mayer v. State*, 309 S.W.3d 552, 554–56 (Tex. Crim. App. 2010) (holding that sufficient evidence must support an assessment of costs in a judgment).

## III. CONCLUSION

Having sustained appellant's third issue, we modify the judgment to delete the specific amount of court costs. Having found no reversible error otherwise, we affirm the judgment as modified.

/s/     Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).