PD-1542-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/14/2015 8:57:15 PM
Accepted 1/21/2015 2:44:12 PM
ABEL ACOSTA
CLERK

# COURT OF CRIMINAL APPEALS

## PD-1542-14

# *Justin Davis Johnson, Appellant,*
# *v.*
# *State of Texas, Appellee.*

**On Discretionary Review from No. 07-13-00158-CR
Seventh Court of Appeals, Amarillo**

**On Appeal from No. CR12127
355th Judicial District Court, Hood County**

# Petition for Discretionary Review

**Michael Mowla
445 E. FM 1382 #3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant**

FILED IN
COURT OF CRIMINAL APPEALS

January 21, 2015

ABEL ACOSTA, CLERK

*ORAL ARGUMENT NOT REQUESTED*

## I. Identity of Parties, Counsel, and Judges

**Justin Davis Johnson**, Appellant.

**Michael Mowla, Attorney for Appellant on Appeal and Discretionary Review**, 445 E. FM 1382 #3-718, Cedar Hill, Texas 75104, phone 972-795-2401, fax 972-692-6636, email michael@mowlalaw.com.

**Scott H. Palmer, Attorney for Appellant at Trial**, 15455 Dallas Parkway Suite 540, Addison, Texas 75001, phone (214) 987-4100, fax (214) 922-9900.

**Phillip Hayes, Attorney for Appellant at Trial**, 3300 Oak Lawn Ave Suite 600, Dallas, Texas 75219, phone (214) 774-0488, fax 214-528-6601.

**State of Texas, Appellee**.

**Rob Christian, Hood County District Attorney, Attorney for Appellee**, 1200 W. Pearl Street, Granbury, Texas 76048, phone (817) 579-3245, fax (817) 579-3247.

**Patrick Berry, Hood County Assistant District Attorney, Attorney for Appellee**, 1200 W. Pearl Street, Granbury, Texas 76048, phone (817) 579-3245, fax (817) 579-3247.

**Ralph H. Walton, Jr., Presiding Judge at Trial, 355th Judicial District Court, Hood County**, 1200 W. Pearl Street, Granbury, Texas 76048, phone (817) 579-3233, fax (817) 579-3243.

## II.     Table of Contents

I.      Identity of Parties, Counsel, and Judges.........................................................2

II.     Table of Contents..............................................................................................3

III.    Table of Authorities .........................................................................................5

IV.     Appendix Index .................................................................................................7

V.      Statement Regarding Oral Argument ................................................................8

VI.     Statement of the Case and Procedural History .................................................9

VII.    Grounds for Review...........................................................................................11

VIII.   Argument ...........................................................................................................13

    **1.** Ground for Review One: The Court of Appeals erred (Issue One) when it concluded that the evidence is legally sufficient to prove that Appellant was unjustified in using deadly force in defense of his person against Armstrong's use or attempted use of unlawful deadly force or to prevent Armstrong's imminent commission of aggravated kidnapping because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording...................................13

        **i.**    Introduction .................................................................................13

        **ii.**   The findings of fact by the Court of Appeals do not comport with the facts presented at trial ..............................14

        **iii.**  The jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony ...........................15

        **iv.**   In its analysis, the Court of Appeals ignored the evidence from the 911 recording .....................................................20

    **2.** Ground for Review Two: The Court of Appeals erred (Issue Two) when it concluded that the evidence is legally sufficient to prove that Appellant committed Aggravated Assault with a Deadly Weapon by Threat because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting

testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording. ........................................22

**3.** Ground for Review Three: The Court of Appeals erred (Issues Three and Four) when it concluded that Appellant waived the issues of Smithson testifying in violation of Appellant's constitutional rights to confrontation when in violation of its own Standard Discovery Order, the trial court abused its discretion and allowed Smithson to testify as an expert. Appellant's objections were clearly objections under the confrontation clause. ..........................................................24

**4.** Ground for Review Four: The Court of Appeals erred (Issues Three, Four, and Five) when it ruled that although the trial court failed to follow its own standard discovery order by allowing Smithson and Frisbie to testify as experts, "the trial court did not engage in any judicial impropriety by simply ruling on the admissibility of evidence."  This was not merely an issue regarding the admissibility of evidence.  This issue is about evidence being willfully withheld from disclosure under a discovery order, and evidence that should have been excluded as this Court ruled in *Oprean v. State*, 201 S.W.3d 724 (Tex. Crim. App. 2006). .....................................................................27

IX.     Conclusion and Prayer ............................................................28

X.      Certificate of Service ..............................................................29

XI.     Certificate of Compliance with Tex. Rule App. Proc. 9.4 ............30

## III. Table of Authorities

### Cases

*Archie v. State*, 221 S.W.3d 695 (Tex. Crim. App. 2007)......................................25

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) ............................... 16, 23

*Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011)................................... 25, 27

*Burch v. State*, 401 S.W.3d 634 (Tex. Crim. App. 2013)............................... 26, 27

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)..............................18

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)............................. 16, 24

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001)......................... 16, 21, 24

*Crawford v. Washington*, 541 U.S. 36 (2004) .............................. 25, 26, 27

*Delay v. State*, 443 S.W.3d 909 (Tex. Crim. App. 2014).......................................17

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000)...............................................................21

*Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013)......................................25

*Hollowell v. State*, 571 S.W.2d 179 (Tex. Crim. App. 1978)...............................28

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ........................................16

*Jackson v. Virginia*, 443 U.S. 307 (1979)........................................... 16, 23

*Johnson v. State*, ___ S.W.3d ___, No. 07-13-00158-CR, 2014 Tex. App. LEXIS 12520 (Tex. App. Amarillo 2014) (designated for publication) ........................................................................... passim

*Lancon v. State*, 253 S.W.3d 699 (Tex. Crim. App. 2008)....................................19

*Lankston v. State*, 827 S.W.2d 907 (Tex. Crim. App. 1992)..................................25

*Laster v. State*, 275 S.W.3d 512 (Tex. Crim. App. 2009) ....................................17

*Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2009) ....................................25

*Luck v. State*, 588 S.W.2d 371 (Tex. Crim. App. 1976)................................. 16, 21

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009) ................................. 25, 27

*Oprean v. State*, 201 S.W.3d 724 (Tex. Crim. App. 2006) ...................................28

*Oprean v. State*, 238 S.W.3d 412 (Tex. App. Houston [1st Dist] 2007), *pet. ref.*) ...............................................................................28

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006) ......................... 16, 21, 24

*Saxton v. State*, 804 S.W.2d 910 (Tex. Crim. App. 1991)........................... 16, 20, 24

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013)........................ 16, 21, 24

*Zuliani v. State*, 97 S.W.3d 589 (Tex. Crim. App. 2003).........................................20

**Statutes**

Tex. Pen. Code § 2.03 (2014) ...............................................................................20

Tex. Pen. Code § 22.02 (2011) .............................................................................10

**Rules**

Tex. Rule App. Proc. 66.3 (2015)................................................................ 21, 27, 28

Tex. Rule App. Proc. 68.11 (2015)........................................................................29

Tex. Rule App. Proc. 68.4 (2015) ...................................................................... 8, 12

Tex. Rule App. Proc. 9.4 (2015)............................................................................30

Tex. Rule Evid. 803 (2011)............................................................................. 18, 24

**Constitutional Provisions**

U.S. Const. Amend. VI .........................................................................................26

**IV. Appendix Index**

**Appendix 1:** Judgment and Opinion of the Court of Appeals in *Johnson v. State*, ___ S.W.3d ___, No. 07-13-00158-CR, 2014 Tex. App. LEXIS 12520 (Tex. App. Amarillo 2014) (designated for publication)

## V. Statement Regarding Oral Argument

Appellant does not request oral argument. *See* Tex. Rule App. Proc. 68.4(c) (2015). Appellant believes that the facts and legal arguments are adequately presented in this petition. However, should this Court determine that its decisional process will be significantly aided by oral argument, Appellant will be honored to present oral argument.

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellant Justin Davis Johnson respectfully submits this petition for discretionary review:

**VI. Statement of the Case and Procedural History**

This petition for discretionary review requests that this Court review the judgment and opinion of the Seventh Court of Appeals in *Johnson v. State*, ___ S.W.3d ___, No. 07-13-00158-CR, 2014 Tex. App. LEXIS 12520 (Tex. App. Amarillo 2014) (designated for publication). (*See* Appendix 1). On February 15, 2013, in the 355th Judicial District Court of Hood County, under Cause Number CR12127, Appellant was convicted by a jury of Aggravated Assault with a Deadly Weapon by Threat and of Aggravated Assault with a Deadly Weapon Causing Serious Bodily Injury. (RR5, 66-69; CR, 82-90).[1]; *See* Tex. Pen. Code § 22.02 (2011).

On February 19, 2013, for the Aggravated Assault with a Deadly Weapon by Threat, the same jury sentenced Appellant to six years to the Texas Department of Criminal Justice, Institutional Division. (RR6, 61-63; CR, 82-90). For the Aggravated Assault with a Deadly Weapon Causing Serious Bodily Injury, the jury

---

[1] The Clerk's Record, which is comprised of a single volume and a sealed volume, is referenced throughout this Brief as "CR" or "CR-Sealed" followed by the page number of the Clerk's Record. The Reporter's Record, which is comprised of ten volumes, is referenced throughout this Brief as "RR" followed by the volume number and page number.

sentenced Appellant to 12 years to the Texas Department of Criminal Justice, Institutional Division. (RR6, 61-63; CR, 82-90). The judgments of conviction and sentences are under two separate documents entitled *Judgment of Conviction by Jury*. (CR, 82-90). The sentences were ordered to run concurrently. (CR, 82-90).

Appellant appealed the *Judgments of Conviction by Jury* and sentences to the Seventh Court of Appeals. On November 19, 2014, the Seventh Court of Appeals affirmed the *Judgments of Conviction by Jury* and sentences. *Johnson v. State*, ___ S.W.3d ___, 2014 Tex. App. LEXIS 12520. This petition for discretionary review follows.

## VII. Grounds for Review

**Ground for Review One:** The Court of Appeals erred (Issue One) when it concluded that the evidence is legally sufficient to prove that Appellant was unjustified in using deadly force in defense of his person against Armstrong's use or attempted use of unlawful deadly force or to prevent Armstrong's imminent commission of aggravated kidnapping because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording

**Ground for Review Two:** The Court of Appeals erred (Issue Two) when it concluded that the evidence is legally sufficient to prove that Appellant committed Aggravated Assault with a Deadly Weapon by Threat because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording.

**Ground for Review Three:** The Court of Appeals erred (Issues Three and Four) when it concluded that Appellant waived the issues of Smithson testifying in violation of Appellant's constitutional rights to confrontation when in violation of its own Standard Discovery Order, the trial court abused its discretion and allowed Smithson to testify as an expert. Appellant's objections were clearly objections under the confrontation clause.

**Ground for Review Four:** The Court of Appeals erred (Issues Three, Four, and Five) when it ruled that although the trial court failed to follow its own standard discovery order by allowing Smithson and Frisbie to testify as experts, "the trial court did not engage in any judicial impropriety by simply ruling on the admissibility of evidence." This was not merely an issue regarding the admissibility of evidence. This issue is about evidence being willfully withheld from disclosure under a discovery order, and evidence that should have been excluded as this Court ruled in *Oprean v. State*, 201 S.W.3d 724 (Tex. Crim. App. 2006).

The relevant pages of the record are: Clerk's Record 82-90, and the following pages of the Reporter's Record:

RR2: 38, 47, 48, 52-75, 80-99, 107-135, 144-191, 216-312

RR3: 10-46, 68-71, 272-301, 311-313, 343

RR4: 40-49, 70-91, 284-338, 345-349, 403

RR6: 61-63

RR7: SX-4, SX-21, SX-61, SX-67, SX-67, SX-81-85, SX-89, SX-103

RR9: DX-1, DX-2, DX-3

*See* Tex. Rule App. Proc. 68.4(f) (2015)

**VIII. Argument**

1. <u>Ground for Review One</u>: **The Court of Appeals erred (Issue One) when it concluded that the evidence is legally sufficient to prove that Appellant was unjustified in using deadly force in defense of his person against Armstrong's use or attempted use of unlawful deadly force or to prevent Armstrong's imminent commission of aggravated kidnapping because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording.**

   i. **Introduction**

In the first issue on appeal, Appellant argued that the evidence is legally insufficient to prove that he was unjustified in using deadly force in defense of his person against Armstrong's use or attempted use of unlawful deadly force or to prevent Armstrong's imminent commission of aggravated kidnapping because: (1) Appellant was justified in using deadly force to defend himself against Armstrong's attack; (2) the State did not meet its burden of proof to disprove the defense beyond a reasonable doubt; (3) Appellant had no duty to retreat; and (4) even if Appellant had a duty to retreat, it is uncontroverted that Appellant tried to retreat but was prevented by Armstrong.

Setting aside all witness testimony and focusing only on the 911 call made by Bolsinger, Bolsinger calls 911 and tells the operator that the shooting was an "accidental discharge." (RR2, 184, 283, 284, 286, 310; RR3, 216; RR7, SX-89). Bolsinger also tells the 911 operator that Armstrong suffered a single gunshot

wound to the jaw and the back of the neck.  (RR2, 285-287; RR7, SX-89:2:00).

What Bolsinger told the 911 operator was almost immediately corroborated by

Bolsinger because shortly after the incident, Bolsinger told an investigator that he

(Bolsinger) had no reason to believe that Appellant shot Armstrong on purpose.

(RR2, 311).

On the recording, Bolsinger **never** tells the 911 operator that Appellant

pointed a gun at him (Bolsinger) or demanded keys as Bolsinger later claimed at

trial.  (RR2, 295).  In fact, it was only after the 911 operator told Bolsinger to turn

Armstrong on his side if Armstrong vomits or if he has trouble breathing that

Bolsinger discovers that Armstrong has another wound in his back.  (RR2, 191,

288-289; RR7, SX-89). Contrary to his testimony at trial, on the 911 recording,

Bolsinger never tells the operator that he heard a second shot or that he saw

Appellant shoot Armstrong a second time.  (RR2, 300, 312).

### ii. The findings of fact by the Court of Appeals do not comport with the facts presented at trial

In its opinion, the Court of Appeals completely ignores the 911 recording.

Instead, the Court of Appeals concludes that "[T]he jury's decision to reject

Appellant's defensive claims ultimately hinges on the credibility of witnesses."

*Johnson*, *Id*. at *6.   The Court of Appeals then made findings regarding the

testimony of Appellant, Bolsinger, and Armstrong.  *Id*. at *6-7.  Even in doing

so, the Court of Appeals does not acknowledge the following regarding Armstrong's testimony: (1) that Armstrong did not recall Appellant's demeanor after Armstrong grabbed Appellant by the neck (RR2, 107); (2) Armstrong did not recall trying to take off Appellant's boots or clothes (RR2, 113); (3) Armstrong previously denied any physical contact with Appellant other than perhaps having "stiff-armed" Appellant (RR2, 85, 91); and (4) Armstrong's recollection of what occurred was not reliable, as his version of the events changed materially three times. (RR3, 68-71; RR7, SX-103, p. 22).

### iii. The jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony

When a reviewing court considers legal sufficiency, it reviews all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found beyond a reasonable doubt that the defendant was guilty, or whether the same rational jury found that the State disproved a defense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Saxton v. State*, 804 S.W.2d 910, 912 (Tex. Crim. App. 1991); and *Luck v. State*, 588 S.W.2d 371, 375 (Tex. Crim. App. 1976). Under *Brooks*, a reviewing court must give deference to the responsibility of the jury to "give full play to the responsibility of the trier of fact fairly to resolve

conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Brooks*, *Id.* at 916; *citing Jackson v. Virginia*, *Id.* at 319; *see also Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). And when conducting a legal sufficiency review, a reviewing court considers all evidence in the record of the trial, whether admissible or inadmissible. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

When considering the evidence presented, a reviewing court may also determine whether the trier of fact "got it wrong" because the verdict the trier of fact renders is irrational. *See Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (a legal sufficiency review "is restricted to guarding against the rare occurrence when a factfinder does not act rationally."). As this Court noted recently,

> "...sometimes appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law."

*Delay v. State*, 443 S.W.3d 909, 912-913 (Tex. Crim. App. 2014). *Delay* specifically deals with a situation where the acts that the State alleged did not constitute a criminal offense under the totality of circumstances, *Id.* at 913, but the concept is the same: when conducting a legal sufficiency review, a reviewing court

may consider whether the evidence support a conviction as a matter of law. A reviewing court must ask whether there is some evidence that a rational trier of fact cannot disregard or disbelieve.

In *Brooks*, this Court provides a hypothetical in which although the properly authenticated surveillance videotape of the event clearly shows that "B" committed the robbery, a witness identifies "A" as the robber. *Brooks*, *Id.* at 906-907. Though it is within the trier of fact's prerogative to believe the witness and disregard the video, based on all of the evidence, the trier of fact's finding that "A" committed the robbery is not a rational finding. *Id.*

The same "video-trumps-testimony" logic discussed in *Brooks* should be applied in cases involving properly authenticated recordings, as is the case before this Court. Here, although there is no video of the relevant events, there is a 911 recording that **absolutely rebuts** Bolsinger's testimony. Weighing the 911 recording versus Bolsinger's testimony is not an evaluation of the credibility or demeanor of witnesses. The 911 recording came from the government, not from Appellant, a defense witness, or even an uninterested person. Therefore, the reliability and authenticity of the 911 recording cannot be questioned. And, the 911 recording is the best evidence of Bolsinger's then-existing mental and emotional condition. *See* Tex. Rule Evid. 803(3) (2011). And although the case did not involve legal sufficiency, in *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex.

Crim. App. 2000), in describing evidence presented in a videotape versus the testimony of an officer, this Court noted,

> "Second, the nature of the evidence presented in the videotape **does not pivot 'on an evaluation of credibility and demeanor.'** Rather, **the videotape presents indisputable visual evidence contradicting essential portions of (the officer's testimony).** In these narrow circumstances, **we cannot blind ourselves to the videotape evidence** simply because (the officer's) testimony may, by itself, be read to support the Court of Appeals' holding."

(emphasis added). The language used by this Court in *Carmouche* follows this Court's conclusions in both *Brooks* and in *Lancon*, in which with regards to contradictory witness testimony, even when contradicting evidence is compelling, the court must give deference to the fact-finder's decision, **unless the record clearly reveals an appropriate contrary result**. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (emphasis added).

Appellant's case is one where the jury simply "got it wrong," and the record "clearly reveals an "appropriate contrary result" to the jury's finding that Appellant did not act in self-defense. This Court should thus find that the "video-trumps-testimony" logic discussed in *Brooks* should be applied in cases where properly authenticated recordings clearly rebut witness testimony, as is the case before this Court.

The only testimonial evidence presented that rebuts Appellant's testimony was that of Bolsinger, as Armstrong did not recall anything after the initial

confrontation with Appellant (for instance, Armstrong did not recall even trying to take off Appellant's boots or clothes, RR2, 113). Bolsinger's testimony is clearly rebutted by the 911 recording. The 911 recording shows that contrary to his testimony, Bolsinger **never** told the 911 operator that Appellant pointed a gun at him (Bolsinger) or demanded keys. (RR2, 295). Bolsinger did not even know that Armstrong had another wound in his back until the 911 operator told Bolsinger to turn Armstrong on his side if Armstrong vomits or if he has trouble breathing. (RR2, 191, 288-289; RR7, SX-89). And also contrary to Bolsinger's testimony, the 911 recording clearly shows that Bolsinger never told the operator that he heard a second shot or that he saw Appellant shoot Armstrong a second time. (RR2, 300, 312).

If Appellant had actually threatened Bolsinger or casually walked up to Armstrong while Bolsinger was attending to Armstrong and **shot** Armstrong, the 911 recording would have captured these events. Thus, **the reason why the 911 recording did not capture the events as Bolsinger alleged in court is because the events never took place.** When this Court eliminates those parts of Bolsinger's testimony that are clearly rebutted by the 911 recording, all that is left that is relevant to the issue of self-defense is Appellant's version of the events. Appellant raised the self-defense claim, and the trial court charged the jury that a reasonable doubt on the issue requires the jury to acquit the defendant. Tex. Pen.

Code § 2.03(d) (2013). Because Appellant produced this evidence, the State has the burden of persuasion to disprove the defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003). This burden does not require the production of additional evidence rebutting self-defense, but rather requires the State to prove its case beyond a reasonable doubt. *Id.*; *Saxton*, 804 S.W.2d at 912; *Luck*, 588 S.W.2d at 375. The State failed to do so, so this Court should reverse the *Judgment of Conviction by Jury* and sentence and enter a judgment of acquittal.

### iv. In its analysis, the Court of Appeals ignored the evidence from the 911 recording

When conducting a legal sufficiency review, a reviewing court must consider all evidence in the record of the trial, whether it was admissible or inadmissible. *Winfrey*, 393 S.W.3d at 767 ; *Conner*, 67 S.W.3d at 197 ; *Powell*, 194 S.W.3d at 507 ; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). The Court of Appeals failed to consider the 911 recording because the court did not even mention the 911 recording.

As a result, this Court should grant discretionary review because not only has the Court of Appeals decided an important question of state and federal law that has not been, but should be, settled by this Court, but also because the Court of Appeals decided an important question of federal law in a way that conflicts with

the applicable decisions of this Court and the Supreme Court of the United States.

*See* Tex. Rule App. Proc. 66.3(b) and (c) (2015).

**2. Ground for Review Two: The Court of Appeals erred (Issue Two) when it concluded that the evidence is legally sufficient to prove that Appellant committed Aggravated Assault with a Deadly Weapon by Threat because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording.**

Appellant incorporates all arguments from Ground One above into this ground and argues that the Court of Appeals erred (Issue Two) when it concluded that the evidence is legally sufficient to prove that Appellant committed Aggravated Assault with a Deadly Weapon by Threat because: (1) the jury was not free to disregard the 911 recording in which a witness was heard by the jury, who during trial provided materially conflicting testimony; and (2) in its analysis, the Court of Appeals ignored the evidence from the 911 recording. There is no indication in the 911 recording that Appellant pointed a gun at Bolsinger and threatened him unless Bolsinger gave Appellant his keys. Bolsinger's demeanor during the entire 911 call was one of concern for Armstrong, not fear of Appellant. Bolsinger even told the 911 operator that the shooting was an accidental discharge, which is corroborated with what Bolsinger told an investigator immediately after the incident. (RR2, 184, 283, 284, 286, 310, 311; RR3, 216; RR7, SX-89). The time frame in which Appellant would have pointed a gun at Bolsinger and demanded Appellant's keys occurred within the time frame of the 911 call, and at no point during the 911 call did Bolsinger hint or state that Appellant pointed his

gun at him and demanded his keys.  (RR2, 295).

Under the standards provided above, and the same "video-trumps-testimony" logic discussed in *Brooks*, the 911 recording absolutely rebuts Bolsinger's testimony, and weighing the 911 recording versus Bolsinger's in-court testimony is not an evaluation of the credibility or demeanor between the testimony of two witnesses.  *See Brooks* , 323 S.W.3d at 912; *Jackson v. Virginia*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778; *Saxton*, 804 S.W.2d at 912.  And as argued above, the 911 recording is the best evidence of Bolsinger's then-existing mental and emotional condition.  *See* Tex. Rule Evid. 803(3) (2011).

Further, the Court of Appeals ignored the 911 call.  When conducting a legal sufficiency review, a reviewing court must consider all evidence in the record of the trial, whether it was admissible or inadmissible.  *Winfrey*, 393 S.W.3d at 767; *Conner*, 67 S.W.3d at 197; *Powell,* 194 S.W.3d at 507; *Dewberry*, 4 S.W.3d at 740.  The Court of Appeals failed to consider the 911 recording because the court did not even mention the 911 recording.

As a result, this Court should grant discretionary review. *See* Tex. Rule App. Proc. 66.3(b) and (c) (2015).

**3. Ground for Review Three:** The Court of Appeals erred (Issues Three and Four) when it concluded that Appellant waived the issues of Smithson testifying in violation of Appellant's constitutional rights to confrontation when in violation of its own Standard Discovery Order, the trial court abused its discretion and allowed Smithson to testify as an expert. Appellant's objections were clearly objections under the confrontation clause.

In combining Issues Three and Four of the Appellant's Brief, the Court of Appeals concluded that "[B]ecause Appellant did not object at trial to testimony by either Smithson or Frisbie based on any denial of any statutory or constitutional right to confrontation, Appellant waived these issues on appeal." *Johnson*, *Id*. at *10. Issues Three and Four of the Appellant's Brief were properly preserved for appellate review. This Court has rejected the hypertechnical requirements for error preservation that the Court of Appeals imposed on Appellant. As this Court held in *Everitt v. State*:

> "To preserve an issue for appellate review, a complainant must have made a timely and specific objection, and the trial court must have ruled on the objection either expressly or implicitly…**The objection must be specific enough "to make the trial court aware of the complaint." Rejecting hypertechnical requirements for preservation, we have held that "all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it**." *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *see also Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007) ("[W]e will not be hyper-technical in examination of whether error was preserved.").

*Everitt v. State*, 407 S.W.3d 259, 263 (Tex. Crim. App. 2013) (emphasis added). In the case before this Court, Appellant made several objections that that were more than "specific enough to make the trial court aware of the complaint," which was to let the trial court know that Appellant was making a confrontation clause objection under *Crawford v. Washington*, 541 U.S. 36 (2004), *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011). Merely because Appellant did not cite these cases when making his objections does not mean that the issues were not preserved for appellate review.

For instance, Appellant made the following objections to Smithson's testimony: when asked whether there had "been some type of medical procedures already done before (Armstrong) reached the hospital," Appellant objected as to Smithson's personal knowledge, and the trial court overruled this objection. (RR3, 13). Smithson then responded, **"[T]he records reflect** that he did have a tube placed in his windpipe to protect his airway. There also was a notification of a gunshot wound to the face and that there was a gunshot wound to the back." (RR3, 13) (emphasis added). This clearly shows that Smithson was testifying to a document prepared by another person. Then when asked whether he took or supervised the taking of an X-ray or CAT scan, he answered "Personally, I did not." (RR3, 26). Finally, Appellant objected, "I'm going to object to this witness testifying about any -- any issue that deals with his expertise, knowledge and

training and **what he actually did rather than what he observed**." (RR3, 29) (emphasis added).

The Confrontation Clause as cited by Appellant in his Brief under *Crawford v. Washington*, 541 U.S. 36 (2004) provides a defendant the right to confront the witnesses against him. U.S. Const. Amend. VI; *see Burch v. State*, 401 S.W.3d 634, 636-640 (Tex. Crim. App. 2013). Testimonial evidence is inadmissible unless (1) the witness appears at trial and is cross-examined or (2) the witness is unavailable and the defense had an opportunity to cross-examine. *Burch*, 401 S.W.3d at 636. And, testimonial statements are those "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*., *citing Crawford*, 541 U.S. at 52 and *Melendez-Diaz, Id*. at 310. Reports such as those testified to by the State experts are considered testimonial statements. *See Bullcoming*, *Id*. at 2710 and *Burch*, *Id*. at 636-637.

This Court should find error in the conclusions of the Court of Appeals in which the court imposed "hypertechnical requirements for preservation." As a result, this Court should grant discretionary review. *See* Tex. Rule App. Proc. 66.3(c) (2015).

4. **Ground for Review Four: The Court of Appeals erred (Issues Three, Four, and Five) when it ruled that although the trial court failed to follow its own standard discovery order by allowing Smithson and Frisbie to testify as experts, "the trial court did not engage in any judicial impropriety by simply ruling on the admissibility of evidence." This was not merely an issue regarding the admissibility of evidence. This issue is about evidence being willfully withheld from disclosure under a discovery order, and evidence that should have been excluded as this Court ruled in *Oprean v. State*, 201 S.W.3d 724 (Tex. Crim. App. 2006).**

The Court of Appeals found that "the trial court did not engage in any judicial impropriety by simply ruling on the admissibility of evidence." *Johnson, Id*. at 11-12. However, this was not merely an issue regarding the admissibility of evidence. This issue is about evidence being willfully withheld from disclosure under a discovery order, and evidence that should have been excluded as this Court ruled in *Oprean v. State*, 201 S.W.3d 724 (Tex. Crim. App. 2006). In *Oprean*, this Court held that evidence willfully withheld from disclosure under a discovery order should be excluded. *See Oprean*, 201 S.W.3d at 726 (Tex. Crim. App. 2006); *citing Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978). In *Oprean*, in violation of its own pretrial order, the trial court allowed into evidence that was not disclosed until minutes before the penalty phase of the trial began. *Id*. at 725. This Court reversed and remanded the case back to the court of appeals to determine what harm was caused by the trial court's failure to follow its own order. *Id*. at 728. The court of appeals found that the admission of the evidence "had a substantial and injurious effect or influence in determining the jury's verdict, and

reversed the trial court's judgment and remanded the case for a new punishment hearing. *See Oprean v. State*, 238 S.W.3d 412, 416 (Tex. App. Houston [1st Dist] 2007), *pet. ref.*).

In the case before this court, the fact that the State intended to use both Smithson and Frisbie as experts was willfully withheld from Appellant. As a result, this Court should grant discretionary review. *See* Tex. Rule App. Proc. 66.3(a), (b), and (c) (2015).

## IX. Conclusion and Prayer

For the reasons stated in this petition, Appellant respectfully prays that this Court grant discretionary review, reverse the judgments of conviction and sentences and enter a judgment of acquittal. In the alternative, Appellant prays that this Court of Appeals reverse the judgments of conviction and sentences and remand this case back to the trial court for further proceedings.

Respectfully submitted,

Michael Mowla
445 E. FM 1382 #3-718
Cedar Hill, Texas 75104
Phone: 972-795-2401
Fax: 972-692-6636
Email: michael@mowlalaw.com
Texas Bar No. 24048680
Attorney for Appellant

/s/ **Michael Mowla**
By: Michael Mowla

## X. Certificate of Service

This certifies that on January 14, 2015, a true and correct copy of this document was served on Rob Christian of the District Attorney's Office, Hood County, by email to rchristian@co.hood.tx.us, and on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015)

/s/ **Michael Mowla**
By: Michael Mowla

**XI. Certificate of Compliance with Tex. Rule App. Proc. 9.4**

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 4,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 4,102 words in the document *except* in the following sections: caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

# APPENDIX 1

No *Shepard's* Signal™
As of: January 11, 2015 8:41 PM EST

# *Johnson v. State*

Court of Appeals of Texas, Seventh District, Amarillo

November 19, 2014, Decided

No. *07-13-00158-CR*

**Reporter**

2014 Tex. App. LEXIS 12520

JUSTIN DAVIS JOHNSON, APPELLANT v. THE STATE OF TEXAS, APPELLEE

**Notice:** PUBLISH.

**Prior History:** **[*1]** On Appeal from the 355th District Court Hood County, Texas. Trial Court No. CR12127; Honorable Ralph H. Walton, Jr., Presiding.

## Core Terms

self-defense, witnesses, trial court, pet, intoxication, asserts, shooting, cabin, ref'd, shot, aggravated assault, deadly weapon, insanity, credibility, impartial, handgun, voluntary intoxication, bodily injury, deadly force, firearm, beyond a reasonable doubt, confrontation, admissible, mitigating, issues, bunk, keys

## Case Summary

### Overview

HOLDINGS: [1]-In a prosecution under *Tex. Penal Code Ann. §§ 22.01(a)(1)*, *22.02(a)(2)* (2011), the evidence was sufficient to prove defendant was not justified in using deadly force under *Tex. Penal Code Ann. § 9.32(a)* because defendant walked up to the alleged victim after the first shot and shot him a second time in the back while he lay on the floor; [2]-Evidence was sufficient to prove defendant committed aggravated assault under *§§ 22.01(a)(2)*, *22.02(a)(2)* (2011) with a deadly weapon because the alleged victim testified that, after shooting the first alleged victim in the back, defendant pointed the handgun at him and demanded his truck keys; [3]-Defendant was not entitled to an instruction under *Tex. Penal Code Ann. § 8.04(a)*, *(b)* (2011) because despite evidence showing that he was intoxicated, there was no evidence showing that he did not know that his conduct was wrong.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements

Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements

Criminal Law & Procedure > Criminal Offenses > Weapons Offenses > Definitions

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

*HN1* To obtain a conviction for aggravated assault under *Tex. Penal Code Ann. §§ 22.01(a)(1)*, *22.02(a)(2)* (2011), the State is required to prove beyond a reasonable doubt that the defendant intentionally, knowingly, or recklessly causes bodily injury to a victim while using or exhibiting a deadly weapon. The deadly weapon includes a firearm. *Tex. Penal Code Ann. § 1.07(a)(17)(A)*.

Criminal Law & Procedure > Defenses > Self-Defense

Evidence > Burdens of Proof > Burdens of Production

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Criminal Law & Procedure > Defenses > Self-Defense

Evidence > Burdens of Proof > Burdens of Production

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

*HN2* A defendant has an initial burden of production on an issue of self-defense under *Tex. Penal Code Ann. § 9.32(a)* and he or she is required to bring forward some evidence to support a defense. Once the defendant produces that evidence, the State has a burden of persuasion to disprove the defense. This burden does not require the production of additional evidence rebutting self-defense, but it does require the State to prove its case beyond a reasonable doubt. Self-defense is an issue of fact to be determined by a jury, and when a trier of fact finds the defendant guilty, there is an implicit finding that the jury rejects the defendant's self-defense theory.

Criminal Law & Procedure > Defenses > Self-Defense

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Evidence > Types of Evidence > Circumstantial Evidence

Criminal Law & Procedure > Criminal Offenses > General Overview

Criminal Law & Procedure > Defenses > Self-Defense

Criminal Law & Procedure > ... > Standards of Review > Substantial Evidence > Sufficiency of Evidence

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Evidence > Types of Evidence > Circumstantial Evidence

Criminal Law & Procedure > Criminal Offenses > General Overview

*HN3* When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense under *Tex. Penal Code Ann. § 9.32(a)*, a question is not whether the State

presents evidence which refutes the appellant's self-defense evidence. Rather, an appellate court examines all of the evidence in a light most favorable to a verdict to determine whether any rational trier of fact can find beyond a reasonable doubt (1) the essential elements of an alleged offense and (2) against the appellant on a self-defense issue. In its review, the appellate court evaluates all of the evidence in a record, both direct and circumstantial, whether admissible or inadmissible.

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of Evidence

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of Evidence

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

*HN4* A jury is the sole judge of the credibility of witnesses and weight to be given to their testimony. As fact finder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties.

Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

Criminal Law & Procedure > ... > Assault & Battery > Aggravated Offenses > Elements

Criminal Law & Procedure > Trials > Burdens of Proof > Prosecution

Evidence > Burdens of Proof > Proof Beyond Reasonable Doubt

*HN5* To obtain a conviction for aggravated assault under *Tex. Penal Code Ann. §§ 22.01(a)(2)*, *22.02(a)(2)* (2011), the State is required to prove beyond a reasonable doubt that an appellant intentionally or knowingly threatens an alleged victim with imminent bodily injury while using or exhibiting a deadly weapon.

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of Evidence

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Weight of Evidence

Criminal Law & Procedure > Juries & Jurors > Province of Court & Jury > Credibility of Witnesses

*HN6* A jury is the sole judge of the witnesses' credibility and weight to be given their testimony.

Constitutional Law > ... > Fundamental Rights > Criminal Process > Right to Confrontation

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Confrontation

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Constitutional Issues

Criminal Law & Procedure > ... > Reviewability > Waiver > Triggers of Waivers

Constitutional Law > ... > Fundamental Rights > Criminal Process > Right to Confrontation

Criminal Law & Procedure > Trials > Defendant's Rights > Right to Confrontation

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Constitutional Issues

Criminal Law & Procedure > ... > Reviewability > Waiver > Triggers of Waivers

*HN7* If a defendant does not object at trial to testimony based on any denial of any statutory or constitutional right to confrontation, the defendant waives these issues on appeal.

Criminal Law & Procedure > ... > Reviewability > Waiver > Triggers of Waivers

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Failure to Object

Criminal Law & Procedure > ... > Reviewability > Waiver > Admission of Evidence

Constitutional Law > ... > Fundamental Rights > Criminal Process > Right to Confrontation

Criminal Law & Procedure > ... > Reviewability > Waiver > Triggers of Waivers

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Failure to Object

Criminal Law & Procedure > ... > Reviewability > Waiver > Admission of Evidence

Constitutional Law > ... > Fundamental Rights > Criminal Process > Right to Confrontation

*HN8* Defendants waive their rights to confrontation by failing to object to the admission of certain evidence at trial. An issue on appeal must comport with an objection made at trial.

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Governments > Courts > Judges

Constitutional Law > ... > Fundamental Rights > Procedural Due Process > Scope of Protection

Governments > Courts > Judges

*HN9* Due process requires a neutral and detached judge. The judge should not act as an advocate or adversary for any party.

Criminal Law & Procedure > Appeals > Reversible Error > General Overview

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Criminal Law & Procedure > Appeals > Reversible Error > General Overview

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

*HN10* To reverse a judgment on a ground of improper conduct or comments of a judge, an appellate court must find (1) that judicial impropriety is in fact committed and (2) probable prejudice to a complaining party.

Evidence > Admissibility > Procedural Matters > General Overview

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Criminal Law & Procedure > Trials > Verdicts > General Overview

Evidence > Admissibility > Procedural Matters > General Overview

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Criminal Law & Procedure > Trials > Verdicts > General Overview

**HN11** See *Tex. Code Crim. Proc. Ann. art. 38.05* (1979).

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Failure to Object

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Exceptions to Failure to Object

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Failure to Object

Criminal Law & Procedure > ... > Reviewability > Preservation for Review > Exceptions to Failure to Object

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

**HN13** When no objection is made, remarks and conduct of a court may not be subsequently challenged unless they are fundamentally erroneous—that is, a error creates egregious harm.

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Evidence > Inferences & Presumptions > Presumptions

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

Criminal Law & Procedure > Juries & Jurors > General Overview

Evidence > ... > Judicial Intervention in Trials > Comments by Judges > General Overview

Evidence > Inferences & Presumptions > Presumptions

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

Criminal Law & Procedure > Juries & Jurors > General Overview

**HN12** A trial court's comments do not constitute fundamental error unless they rise to such a level as to bear on the presumption of innocence or vitiate the impartiality of a jury.

Criminal Law & Procedure > Defenses > Insanity > Insanity Defense

Criminal Law & Procedure > Defenses > Intoxication

Criminal Law & Procedure > ... > Departures From Guidelines > Downward Departures > Diminished Capacity

Criminal Law & Procedure > Defenses > Insanity > Insanity Defense

Criminal Law & Procedure > Defenses > Intoxication

Criminal Law & Procedure > ... > Departures From Guidelines > Downward Departures > Diminished Capacity

**HN14** Insanity is an affirmative defense to prosecution that, at the time of the conduct charged, an actor, as a result of severe mental disease or defect, does not know that his or her conduct is wrong. *Tex. Penal Code Ann. § 8.04(a)* (2011). Voluntary intoxication is not a defense to the commission of a crime; but evidence of temporary insanity caused by intoxication may be introduced by an actor in

mitigation of his or her punishment. *§ 8.04(a)*, *(b)*. In other words, unlike the defense of insanity which will bar a conviction of the crime, evidence of temporary insanity caused by intoxication can be used by a jury to lessen a punishment.

> Criminal Law & Procedure > ... > Departures From Guidelines > Downward Departures > Diminished Capacity
>
> Criminal Law & Procedure > ... > Jury Instructions > Particular Instructions > Theory of Defense
>
> Criminal Law & Procedure > Defenses > Insanity > Insanity Defense
>
> Criminal Law & Procedure > Defenses > Intoxication
>
> Criminal Law & Procedure > Trials > Burdens of Proof > Defense
>
> Criminal Law & Procedure > ... > Departures From Guidelines > Downward Departures > Diminished Capacity
>
> Criminal Law & Procedure > ... > Jury Instructions > Particular Instructions > Theory of Defense
>
> Criminal Law & Procedure > Defenses > Insanity > Insanity Defense
>
> Criminal Law & Procedure > Defenses > Intoxication
>
> Criminal Law & Procedure > Trials > Burdens of Proof > Defense

*HN15* Like an affirmative defense of insanity and any other defensive issue, whether a defendant is entitled to a mitigation instruction under *Tex. Penal Code Ann. § 8.04(b)* depends on whether an issue is raised by the evidence. Before it is necessary for a trial court to affirmatively instruct a jury on voluntary intoxication as mitigating evidence at a punishment stage of a trial, the defendant must establish that he or she is intoxicated and that intoxication renders him or her temporarily "insane," i.e., the defendant must establish that his or her voluntary intoxication causes him or her to not know his or her conduct is wrong. He or she must do more than merely present evidence of intoxication or even gross intoxication. He or she must show that either intoxication makes him or her unaware that what he or she is doing is wrong, or it makes him or her incapable of conforming his or her conduct to the law.

**Judges:** Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**Opinion by:** Patrick A. Pirtle

## Opinion

Appellant, Justin Davis Johnson, was convicted by a jury of aggravated assault causing serious bodily injury with a deadly weapon, a firearm, and aggravated assault by threat with a deadly weapon, a firearm.[1] He was sentenced to twelve years and six years confinement, respectively, with the two sentences to be served concurrently. On appeal, Appellant asserts the evidence was legally insufficient (1) to prove he was not justified in using deadly force against the victim of the first offense and (2) to prove he committed aggravated assault with a deadly weapon against the victim of the second offense. He also asserts the trial court erred by permitting two witnesses, (3) Smithson and (4) Frisbie,

---

[1] *See* Tex. Penal Code Ann. §§ 22.01, 22.02 (West 2011).

to testify as experts, and (5), in so doing, failed to act as a neutral and impartial judge, and (6) also erred by denying a voluntary intoxication instruction in the punishment charge. We affirm.

BACKGROUND

On December 27, 2011, Appellant and Kent Bolsinger arrived at [*2] a hunting lease located in Hood County, Texas. Ryan Armstrong, whom Appellant had never previously met, shared the hunting cabin on the lease with the two other men. After dinner on the 28th, Appellant was outside the cabin firing rounds into a fire pit. Armstrong and Appellant, both of whom had been drinking, exchanged words concerning this particular conduct. When Appellant protested and started to leave, Armstrong and Bolsinger prevented him from doing so due to his state of intoxication. Bolsinger took Appellant's keys and Armstrong "escorted" him to a bunk room in the cabin, pushed him onto a sofa and told him to "sleep it off." When Armstrong turned and reached the doorway, Appellant shot him with a .380 semi-automatic handgun, once in the jaw and once in the back.[2] After Bolsinger went to assist Armstrong, Appellant pointed his handgun at him and asked for the keys to his vehicle. Bolsinger did not give Appellant his keys but instead summoned medical assistance.

In March 2012, Appellant was indicted for two counts of aggravated assault with a deadly weapon, to wit: a firearm. Count one alleged that on or about December 28, 2011, Appellant intentionally, knowingly, or recklessly caused "serious bodily injury to [Armstrong] by shooting him with a firearm . . . ." Count two alleged that, on or about the same date, Appellant intentionally or knowingly threatened "imminent bodily injury to [Bolsinger]" and did then and there use or exhibit a deadly weapon, to wit: a firearm.

Following a five-day jury trial, Appellant was found guilty on both counts and the trial court issued two judgments sentencing Appellant to twelve years on count one and six years on count two, with the two sentences to be served concurrently. This appeal followed.

ISSUE [*4] ONE: SELF-DEFENSE

Appellant asserts there was legally insufficient evidence at trial to establish he was not justified in using deadly force against Armstrong. In support, he contends he was justified in shooting Armstrong because he was in fear of death or imminent bodily injury. At the time of the incident, both men had been drinking heavily. Appellant testified at trial that, prior to the shooting, Armstrong had punched, kicked and choked him. Appellant also produced character witnesses to testify he was normally a peaceful, law-abiding person.

*HN1* To obtain a conviction for aggravated assault under count one of the indictment, the State was required to prove beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Armstrong while using or exhibiting a deadly weapon. *See TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2)* (West 2011). A deadly weapon includes a firearm. *See id. § 1.07(a)(17)(A)*.

---

[2]   Not surprisingly, Appellant's version of the events differs somewhat from that testified to by Armstrong and Bolsinger. According to Appellant, Armstrong knocked him to the ground, slammed him face-first into his vehicle, [*3] threw him into a fence and then forcibly escorted him into the sleeping area of the cabin, where he started hitting Appellant in the head. Appellant further testified that Armstrong placed his hands around Appellant's neck and screamed, "I'm going to fucking kill you." Appellant testified that, fearing for his life, he shot Armstrong two times, once in the jaw causing him to spin around and then once in the back.

It is undisputed that Appellant used deadly force and intended to shoot Armstrong twice with a semi-automatic handgun. Appellant asserts, however, he was justified in using deadly force because he reasonably believed deadly force was immediately necessary to protect him against Armstrong's [*5] use or attempted use of unlawful deadly force. *See id*. *§ 9.32 (a)*.

*HN2* Appellant had the initial burden of production on the issue of self-defense and he was required to bring forward some evidence to support the defense. *Zuliani v. State, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003)*. Once he produced that evidence, the State had the burden of persuasion to disprove the defense. *Id*. This burden does not require the production of additional evidence rebutting self-defense, but it does require the State to prove its case beyond a reasonable doubt. *Id*. Self-defense is an issue of fact to be determined by the jury, *London v. State, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd)*, and when, as here, the trier of fact finds the defendant guilty, there is an implicit finding that the jury rejected the defendant's self-defense theory. *Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991)*.

*HN3* When an appellant challenges the legal sufficiency of the evidence to support rejection of a defense such as self-defense, the question is not whether the State presented evidence which refuted appellant's self-defense evidence. *Saxton, 804 S.W.2d at 914*. Rather, we examine all of the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offense and (2) against appellant on the self-defense issue. [*6] *Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)* (citing *Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979))*. *See Saxton, 804 S.W.2d at 914*. In our review, we evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)*, *cert. denied*, *529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000)*.

The jury's decision to reject Appellant's defensive claims ultimately hinges on the credibility of witnesses. Armstrong testified he grabbed Appellant by the back of his neck and escorted him to the cabin—not "an aggressive grab, it was more of a guide." He then shoved Appellant into the corner of the bunk room where the sofa was located. Bolsinger testified that, before Appellant shot Armstrong, Armstrong was helping Appellant up the cabin's front porch stairs with one hand on the side of his shoulder, one hand kind of on Appellant's waist and back—"kind of helping guide him into the cabin." Bolsinger testified he did not observe any violence and did not hear any physical altercation prior to the shooting. Bolsinger also testified that it was not until Armstrong was standing on the threshold of the doorway between the cabin's living room and bunk room that Armstrong was first shot by Appellant. Appellant then walked over to where Armstrong was lying and shot him a second time in the back. Contrary to the testimony of Armstrong [*7] and Bolsinger, Appellant testified that, prior to shooting Armstrong, he had been kicked, beaten, choked and thrown about the cabin by Armstrong. He testified he reacted by rapidly firing two shots.

*HN4* The jury is the sole judge of the credibility of witnesses and weight to be given to their testimony. *Golden Eagle Archery v. Jackson, 116 S.W.3d 757, 761 (Tex. Crim. App. 2003)*. As fact finder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State, 805 S.W.2d 459, 461 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)*. The statements of Appellant and his witnesses do not conclusively prove a claim of self-defense. *See London, 325 S.W.3d at 203*; *Denman v. State, 193 S.W.3d 129, 132-33 (Tex.*

*App.—Houston [1st Dist.] 2006, pet. ref'd)* (finding evidence sufficient to support conviction of aggravated assault under *Jackson v. Virginia* despite defendant's claim of self-defense, which was based on testimony of defendant and other witnesses who stated complainant had assaulted or threatened defendant on prior occasions). Further, that Appellant walked up to Armstrong after the first shot and shot Armstrong a second time in the back while he lay on the floor, if believed by the jury, is evidence negating his claim of self-defense. *See Kirk v. State, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd)*; *Smith v. State, 355 S.W.3d 138, 146-47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)*.

Based on the testimony of Bolsinger and Armstrong coupled with Appellant's conduct subsequent to the first shot, the jury **[*8]** could have reasonably concluded that Appellant's conduct was inconsistent with his self-defensive claims. *See Cleveland v. State, 177 S.W.3d 374, 380-81 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd)*, *cert. denied*, 547 U.S. 1073, 126 S. Ct. 1774, 164 L. Ed. 2d 523 (2006) (finding that jury could have reasonably concluded that defendant's conduct in continuing to stab his wife's back as she lay bleeding on floor was inconsistent with his claim of self-defense). Having considered the entire record, we conclude the jury rationally could have found each element of the charged offense was proven beyond a reasonable doubt and that it could have rationally rejected Appellant's claim of self-defense. *See Zuliani, 97 S.W.3d at 594*. Accordingly, we hold the evidence was sufficient to support Appellant's conviction for aggravated assault against Armstrong. Appellant's first issue is overruled.

ISSUE TWO: AGGRAVATED ASSAULT WITH A DEADLY WEAPON

Appellant asserts no rational trier of fact would have found him guilty of pointing a gun at Bolsinger and threatening to shoot him if he didn't give Appellant his truck keys. He asserts inconsistencies in Bolsinger's account of what occurred that night called his credibility into question and the jury should have believed him rather than Bolsinger.

**HN5** To obtain a conviction for aggravated assault under count two of the indictment, **[*9]** the State was required to prove beyond a reasonable doubt that Appellant intentionally or knowingly threatened Bolsinger with imminent bodily injury while using or exhibiting a deadly weapon. *See TEX. PENAL CODE ANN. §§ 22.01(a)(2)*, *22.02(a)(2)* (West 2011). Because the standard of review for legal sufficiency set forth in our discussion of issue one applies equally here, we will not restate it.

Appellant's second issue also presents a credibility question decided by the jury. Considering the evidence in a light most favorable to the verdict, Bolsinger testified that, after shooting Armstrong in the back, Appellant pointed the handgun at him and demanded his truck keys. Appellant denied the threat to Bolsinger took place. **HN6** The jury is the sole judge of the witnesses' credibility and weight to be given their testimony. *See Golden Eagle Archery, 116 S.W.3d at 761*. Further, while there may have appeared to be inconsistencies in Bolsinger's testimony regarding what occurred that night, those inconsistencies do not render the evidence insufficient to support a conviction, *see Cooks v. State, 844 S.W.2d 697, 708 (Tex. Crim. App. 1992)*, and we reject Appellant's argument that credibility issues among the State's witnesses render the evidence insufficient. Bolsinger's testimony alone is sufficient to convict Appellant. **[*10]** *See Anderson v. State, 11 S.W.3d 369, 375-76 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd)*. Appellant's second issue is overruled.

ISSUES THREE, FOUR AND FIVE: RIGHT TO CONFRONTATION AND IMPARTIAL JUDGE

In issues three and four, Appellant asserts the trial court abused its discretion by permitting Dr. John Smithson and Sonny Frisbie to testify as expert witnesses. In support, Appellant contends the trial court violated his statutory and constitutional rights to confrontation as well as his *First* and *Fourteenth Amendment* rights under the United States Constitution by permitting them to testify at trial. In his fifth issue, Appellant asserts he was denied a trial before a fair and impartial judge because the trial judge erroneously permitted Smithson and Frisbie to give expert testimony.

RIGHT TO CONFRONTATION

**HN7** Because Appellant did not object at trial to testimony by either Smithson or Frisbie based on any denial of any statutory or constitutional right to confrontation, Appellant waived these issues on appeal. *See Clark v. State, 365 S.W.3d 333, 339 n.1 (Tex. Crim. App. 2012)*. *See also Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000)*, *cert. denied*, *531 U.S. 1128, 121 S. Ct. 885, 148 L. Ed. 2d 793 (2001)* (**HN8** defendants waive their rights to confrontation by failing to object to the admission of certain evidence at trial). The issue on appeal must comport with the objection made at trial. *See Clark, 365 S.W.3d at 339* (citing *Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986))*.

FAIR AND IMPARTIAL JUDGE

Appellant next asserts he was denied **[*11]** a trial before a fair and impartial judge because the trial judge permitted Smithson to testify to the presence of foreign bodies in CAT scan and x-ray images and read Dr. Ashley Johnson's report from Armstrong's medical records. He also asserts his rights were violated when the trial court permitted Frisbie to testify about test-firing rounds from the handgun used by Appellant to shoot Armstrong. We disagree.

**HN9** Due process requires a neutral and detached judge. *Brumit v. State, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006)*. A judge should not act as an advocate or adversary for any party. *Dockstader v. State, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)*. **HN10** To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed and (2) probable prejudice to the complaining party. *Id*. **HN11** ″In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.″ *TEX. CODE CRIM. PROC. ANN. art. 38.05* (West 1979).

We find that the trial court did not engage in any judicial impropriety **[*12]** by simply ruling on the admissibility of evidence. Pursuant to *article 38.05 of the Texas Code of Criminal Procedure,* the trial court decided whether the evidence was admissible and made no statement ″upon the weight of the same or its bearing in the case.″ *Id*. As regards Smithson reading Ashley's report, Appellant had agreed to admit Armstrong's medical records including Ashley's report without objection in open court. Furthermore, Frisbie testified as a fact witness who described test-firing the handgun and the direction the shell casings were ejected from the gun. As such, he was merely testifying as a fact witness concerning his personal observations and he did not express any opinion or testify to any conclusions from those facts.

Assuming, without deciding, the trial court erred in allowing Smith to comment on CAT scan and x-ray images, whether there was fundamental error depends on whether Appellant can establish egregious

harm. *See [Powell v. State, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.)](#);* [Moreno v. State, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.)](#) (citing *[Brewer v. State, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978))](#).*[3] ***HN12*** A trial court's comments do not constitute fundamental error unless they rise to such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury. *[Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001)](#).* Here, the admission of Smithson's testimony related to the Ashley report and Frisbie's testimony were not reversible **[\*13]** error.

Furthermore, Smithson's testimony described CAT scan and x-ray images that were visible representations of two bullets, one in Armstrong's neck and another near his spine giving some indication of the possible direction from which the bullets entered his body—all of which had been testified to by numerous other witnesses without objection. The similar testimony from other witnesses mitigates against the harmfulness of any error as does the overwhelming evidence of Appellant's guilt—eyewitness testimony of Armstrong and Bolsinger coupled with other corroborating evidence, i.e., testimony that a spent shell casing was found in the bunk room coupled with Frisbie's testimony regarding the direction spent shell casings were ejected from the handgun, Frisbie's testimony describing the location and amount of blood stains in the bunk room resulting from the shooting, photographs **[\*14]** showing the cabin's living room furniture was undisturbed, EMS paramedic Jody Alvey-Fries's testimony indicating that, at the cabin, Appellant evidenced only a superficial wound to his ear that was not fresh, Bolsinger's testimony that Appellant's abrasion on his ear resulted from an accident chopping wood earlier that day, and Investigator Patrick Felan's testimony that he collected bullet fragments from Armstrong's neck and back. *See [Mosley v. State, 983 S.W.2d 249, 258 (Tex. Crim. App. 1999)](#), cert. denied,* [526 U.S. 1070, 119 S. Ct. 1466, 143 L. Ed. 2d 550 (1999)](#).

Given the strength of the State's case and the presence of other testimony concerning the locations where Armstrong was shot and the direction the bullets were traveling when they struck Armstrong, we find beyond a reasonable doubt that the admission of Smithson's testimony regarding CAT scan and x-ray images did not contribute or affect the very basis of the case or vitally affect Appellant's justification theory of self-defense. *See [Cosio v. State, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)](#). See also [Tex. R. App. P. 44.2(a)](#).* Accordingly, we overrule Appellant's third, fourth and fifth issues.

ISSUE SIX—VOLUNTARY INTOXICATION INSTRUCTION

Finally, Appellant asserts the trial court erred when it denied him a voluntary intoxication instruction at the end of the penalty phase of the trial. He asserts that **[\*15]** shooting Armstrong was so out of character for him that the trial court should have concluded that he did not know his conduct was wrong. In support, he points to his mental state of gross intoxication and character witnesses who testified to his peaceful, law-abiding character.

***HN14*** Insanity is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong. *[Tex. Penal Code Ann. § 8.04(a)](#)* (West 2011). Voluntary intoxication is *not* a defense to the commission of a crime; but evidence of *temporary insanity* caused by intoxication and may be introduced by the actor

---

[3] Appellant made no objection at trial based on the ***First*** or ***Fourteenth Amendments*** because of a denial of his rights to a fair and impartial judge or trial. ***HN13*** When no objection is made, "remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous—that is, the error creates egregious harm." *See [Powell v. State, 252 S.W.3d at 744-45](#).*

in mitigation of his punishment. *Id*. at *(a)*, *(b)*. In other words, unlike the defense of insanity which would bar the conviction of a crime, evidence of temporary insanity caused by intoxication could be used by a jury to lessen the punishment.

*HN15* Like the affirmative defense of insanity and any other defensive issue, whether a defendant is entitled to a mitigation instruction under *section 8.04(b)* depends on whether the issue is raised by the evidence. *Arabie v. State, 421 S.W.3d 111, 114 (Tex. App.—Waco 2013, pet. ref'd)*. Before it is necessary for the trial court to affirmatively instruct the jury on voluntary intoxication **[*16]** as mitigating evidence at the punishment stage of the trial, the defendant must establish that he was intoxicated and that intoxication rendered him temporarily ″insane,″ *Arnold v. State, 742 S.W.2d 10, 14 (Tex. Crim. App. 1987)*, i.e., the defendant must establish that his voluntary intoxication caused him to not know his conduct was wrong. *Mendenhall v. State, 77 S.W.3d 815, 817-18 (Tex. Crim. App. 2002)*. He must do more than merely present evidence of intoxication or even gross intoxication. *Arnold, 742 S.W.2d at 14*. He must show that either intoxication made him unaware that what he was doing was wrong, or it made him incapable of conforming his conduct to the law. *See Cordova v. State, 733 S.W.2d 175, 190 (Tex. Crim. App. 1987)*.

Here, Appellant's primary defense in the trial court was self-defense. He testified he had a clear recollection of the crime and claimed he was only doing what was necessary to defend himself against an attack by Armstrong. He gave a detailed step-by-step account of what occurred the night of the incident and what he was thinking and feeling at the time the crime was committed. His character witnesses described Appellant as a law-abiding man who knew right from wrong.

Despite evidence showing Appellant was intoxicated, there is no evidence tending to show that he did not know that his conduct was wrong. *See Cordova, 733 S.W.2d at 190* (evidence that defendant was ″crazy drunk″ insufficient **[*17]** to show temporary insanity). Because he failed to present evidence of temporary insanity, he was not entitled to a mitigating instruction on insanity by intoxication during the punishment phase, *Meine v. State, 356 S.W.3d 605, 611 (Tex. App.—Corpus Christi 2011, pet. ref'd)*, and we find the trial court did not err in refusing to submit an instruction on voluntary intoxication. *Rainey v. State, 949 S.W.2d 537, 543 (Tex. App.—Austin 1997, pet. ref'd)*, *cert. denied*, *525 U.S. 880, 119 S. Ct. 186, 142 L. Ed. 2d 152 (1998)*. Appellant's sixth issue is overruled.

CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle

Justice

Publish.